

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GROVER SELLERS
GERALD C. MANN
ATTORNEY GENERAL

Honorable O. P. Lockhart, Chairman
Board of Insurance Commissioners
Austin, Texas

Dear Sir:

Opinion No. O-5996
Re: May mutual assessment associa-
tions levy annual assessments
in advance against the policies
of their members, with provi-
sion that the amount of the an-
nual assessment may be paid in
periodic installments, and that
at the death of the insured,
the unpaid installments of the
annual premium will be deducted
from the face amount of the
policy?

Your request for an opinion on the above matter has
been received and considered.  We quote said request as fol-
lows:

"Please advise me whether mutual assess-
ment associations may levy annual assessments
in advance against the policies of their mem-
bers with provision that the amount of the an-
nual assessment may be paid in periodic in-
stallments, and that at the death of the in-
sured, the unpaid installments of the annual
premium will be deducted from the face amount
of the policy."

It is our opinion that your request as framed should
be answered in the negative, but such answer, when considered
in connection with some of the laws covering mutual assess-
ment insurance associations and companies, is subject to qual-
ifications, as will hereinafter be shown.

All references made herein to statutes will be to
Vernon's Annotated Revised Civil Statutes of 1925, and amend-
ments thereof.

Article 5068-1 (Chapter 22, Title 78) applies to all
insurance companies and associations which issue policies or
certificates of insurance on the lives of persons, or provide

health and accident benefits, upon the so-called mutual assessment plan, or whose funds are derived from the assessment of its policyholders or members, and applies, in fact, to all life, health and accident companies or associations which do not come within the provisions of Chapters 3, 5, 7, 8, 9, 18, 19 or 20, Title 78, of the Revised Civil Statutes of Texas.

The term "assessment", as used in said law, is defined as follows:

"'Assessment' shall include premiums and mean any and all money or valuable thing paid in consideration of such insurance as is afforded by the certificate."

The term "membership fee", as used in said law, is defined as follows:

"'Membership fee' shall be the amount of the first assessment or assessments permitted by the Board to be placed in the expense fund of associations, representing cost of soliciting or procuring the member."

Section 9 of said Article is, in part, as follows:

"Every policy or certificate of insurance issued by an association shall state definitely on the front page the amount of death benefit to be paid, and the circumstances or conditions under which it shall be paid shall be plainly stated in the policy. Every health, accident or other benefit shall be plainly stated in the policy, and the terms and conditions under which they shall be paid shall be stated plainly in the policy."

Section 11 of said Article is, in part, as follows:

"Each association shall levy regular and periodical assessments by whatever name they may be called. These assessments must be in such amounts and at such proper intervals as will meet the reasonable operating expenses of the association, and pay in full the claims arising under its certificates. When or if in the course of operation it shall be apparent that the claims cannot be met in full from current

assessments and funds on hand, the amount must
be increased until they are adequate to meet
such claims, and the Board shall so order."

Section 13 of said Article is, in part, as follows:

"It is the primary purpose of this Act to
secure to the members of the associations and
their beneficiaries the full and prompt pay-
ment of all claims according to the maximum
benefit provided in their certificates. It is
therefore required of all associations that
all claims under certificates be paid in full
within sixty (60) days after receipt of due
proof of claims."

Section 17 of said Article is as follows:

"If the payments of the members of any
association coming within the scope of this
Act, on certificates issued and in force when
this Act takes effect, or the reinsurance or
renewals of such certificates, shall prove in-
sufficient to pay matured death and disabil-
ity claims in the maximum amount stated in
such policies or certificates, and to provide
for the creation and maintenance of the funds
required by its laws, such association may
with the approval of the Board of Insurance
Commissioners and after proper hearing before
said Board provide for meeting such deficiency
by additional, increased, or extra rates of
payment, or by reduction in the maximum bene-
fits stated in such policies or certificates
then in force, or by both such increased pay-
ments and reduced maximum benefits, or the
members may be given the option of agreeing to
reduced maximum benefits, or of making in-
creased payments."

We find nothing in said Article, the material portions
of which are above set out, to prevent the levy of an annual
assessment in advance, with provision that the amount thereof
can be paid in periodical installments, so long as such assess-
ments are in such amounts as will meet the reasonable operating
expenses of the association and pay in full the claims arising
under its certificates. This would not apply, however, to a
"membership fee", but a separate assessment should be made for

that purpose, or a part of the annual assessment be set aside therefor. (This Article does not authorize the unpaid installments of the annual assessment to be deducted from the face of the policy at the death of the insured.)

As hereinabove stated, Article 5068-1 (Chapter 22, Title 78) applies to all insurance companies or associations which do not come within certain chapters the numbers of which are there set out, and this would leave Chapters 6, 8a and 9a, Title 78, which cover the transaction of insurance such as is included in your question. Chapter 6, Title 78, was repealed by Article 4860a-18, which is a part of Chapter 9, Title 78, above referred to, but Chapter 9 deals with mutual insurance and not mutual assessment insurance, and besides, said Article 4860a-18 provides that such repeals "shall not apply to or effect any Company or Association now doing business under the laws repealed, and they shall continue to be governed by the regulatory provisions of such laws." Therefore, such companies or associations as are still doing business under Chapter 6, Title 78, are governed by the provisions thereof.

Article 5068-1, Section 15, provides in part as follows:

"The provisions of this Act requiring the full payment of claims shall not apply to any groups, club, or class previously organized and now operating on the post-mortem or assessment-as-needed plan and any association having such a group, club, or class may continue to operate it on said plan so long as any such group, club, or class has a sufficient membership at the assessment rate charged to produce, and so long as it does produce, for the mortuary or relief fund at least fifty (50%) per cent of the maximum value of the largest policy in said group, club, or class. In the event the membership of any group, club or class is only sufficient in number to pay between fifty (50%) per cent and one hundred (100%) per cent of the maximum value, it shall be the duty of the officer of said association to have printed on each assessment notice the percentage of the maximum value of the certificate actually paid on the last death claim in said group, club, or class . . ."

Honorable O. P. Lockhart, page 5


Articles 4784-4799 (Chapter 6, Title 78, repealed) provide for the organization of a corporation to transact accident insurance business upon the co-operate or mutual assessment plan under and subject only to the provisions of said chapter.

Article 4794 is as follows:

"Each certificate of membership, policy or other contract of insurance issued by such company shall bear on its face in red letters the following words: 'The payment of the benefit herein provided for is conditioned upon its being collected by this company from assessments and other sources as provided in its by-laws.' Nothing in this chapter shall be construed to prevent the creation of a reserve fund by any such organization, which fund, or its accretions, or both, are to be used only for the payment of losses or benefits, as provided in the by-laws of such corporation. Such corporation may charge a membership or admission fee of not exceeding three dollars upon each policy issued, the proceeds of which may be placed in the expense fund, and at least sixty per cent of all amounts realized from any other sources shall be used only for the payment of losses or benefits as they occur, or the balance thereof remaining after paying such losses or benefits transferred to such reserve fund. Such membership fee may also apply as a payment or credit upon the initial assessment or premium, if the by-laws of the corporation so provide. Acts 1905, p. 311, Acts 1915, p. 255."

Article 4795 is as follows:

"Each notice of assessments made by such corporation upon its members, or any of them, shall truly state the cause and purpose of such assessment, amount paid on the last claim paid, the cause of disability or death, the name of the member for whose death or disability such payment was made, the maximum face value of the certificate or policy, and, in case of disability, the maximum amount provided for in such policy or certificate for such disability, and, if not paid in full, the reason therefor. Act 1903, p. 174."

Article 4797 is as follows:

"Every policy or certificate issued by any
such corporation shall specify the sum of money
which it promises to pay upon the contingency
insured against, and the number of days after
the receipt of satisfactory proof of the happen-
ing of such contingency at which such payment
shall be made. Upon the happening of such con-
tingency, such corporation shall be liable for
the payment of such amount in full at the time
so specified, subject to such legal defenses as
it may have against same. If the sum realized
by it from assessments made in accordance with
its by-laws to meet such payment, together with
such other sums as its by-laws may provide shall
be used for that purpose, shall be insufficient
to pay such sum in full, for which it is so lia-
ble, then the payment of the full amount so
realized shall discharge such corporation from
all liability, by reason of the happening of
such contingency, and in that event, such cor-
poration shall be liable only for the amount so
actually realized. Id. Sec. 12."

It is our opinion that all companies or associa-
tions doing business under Articles 4784-4799 are doing busi-
ness on the "post-mortem or assessment-as-needed" plan as
referred to in Article 5068-1, Section 15, as the notice of
assessment required by Article 4795 would be meaningless un-
less applied to assessments made after the losses had already
accrued. Therefore, it would be impossible for such com-
panies or associations to levy an annual assessment in ad-
vance and make provisions for it to be paid in periodic in-
stallments.

Article 4859f (Chapter 8A, Title 78), Section 1, is
as follows:

"Sec. 1. Any corporation organized and in-
corporated under a pre-existing law in this State
without capital stock and not for profit, which
law has been amended or repealed or reenacted,
and which was operating and actually carrying on
in this State immediately prior to January 1, 1933,
the state-wide business of mutually protecting or
insuring the lives of its members by assessments
made upon its members may comply with the terms of

this Act, subject to the subsequent provisions hereof."

Section 9 of said Article is, in part, as follows:

"The relief funds of any corporation complying with and operating under the terms of this Act shall be created by assessments levied upon the members of said corporation. Such assessments may be made periodically upon such contingencies as may be provided in the by-laws of the corporation, or at such stated periods as in the discretion of the managing officer or officers of the corporation may be deemed necessary. The benefits to be paid by such corporation shall be dependent upon the amount realized from assessments upon the membership, and the certificate shall so provide; and the certificate shall also state the maximum to be paid. Such corporation shall provide in its by-laws for the portion of its assessments to be allotted to the mortuary fund and may provide for the payment out of said mortuary fund of all attorneys' fees and necessary expenses arising out of the defense, settlement, or payment of contested claims."

Section 11 of said Article is, in part, as follows:

"No corporation hereunder shall issue any certificate or policy upon a limited payment plan, nor guarantee or promise to pay any type of endowment or annuity benefits, but shall confine its operation to the issuance of certificates looking to continuous payment premiums or assessments during the life time of the policy-holder.. . ."

Section 12 of said Article is as follows:

"No corporation operating under this Act shall write any policy or certificate of insurance calling for a maximum benefit in excess of Five Thousand Dollars ($5,000.00), nor any policy or certificate of insurance unless the membership of said corporation, liable for assessments on said policy or certificate or group or class or club liable therefor shall be sufficient in number

at the assessment rate charged said class to pay
fifty per cent (50%) of the maximum benefit set
forth in said policy or certificate. In the event
the membership in any group, class, or club of
said corporation shall fall below such number,
then the corporation shall immediately notify the
members of such group, class, or club, and if
said membership is not increased to said number
within six (6) months thereafter, said group,
class, or club shall be consolidated with some
other group, class, or club, or discontinued.
In the event any corp.ration hereunder has only
one class, group, or club, then in the event the
membership of said corporation shall at any time
fall below fifty per cent (50%) of the number
required at the assessment rate charged to pay the
maximum benefit provided by any one of its policies
or certificates, the corporation shall immediately
notify the members of the corporation, and unless
the membership is increased to said number within
six (6) months thereafter, the Attorney General
shall take steps under Section 13 of this Act to
bring about the liquidation of said corporation."

Section 13 of said Article is, in part, as follows:

"At any time the Board of Insurance Commis-
sioners, after investigation, shall be satisfied
that any corporation operating under the provi-
sions of this Act in this State is insolvent, 'be-
cause the death claims due and unpaid which have
matured under policies written after such corpora-
tion complied with the terms of this Act exceed
the assets of the corporation and assessments or
periodical payments called, or to be called, or in
the process of collection, or which may reasonably
be made against the members subject to assessment,
or has exceeded its powers, failed to comply with
any provisions of the laws of this State applica-
ble to it, or has a membership of less than five
hundred (500) paying their assessments, the Board
shall report the fact to the Attorney General of this
State who shall thereupon apply to any court in
Travis County having jurisdiction thereof for leave
to file a suit in the nature of quo warranto to for-
feit the charter of such corporation or to require
it to comply with the law or to satisfy the Board as
to its solvency. . ."

The above quoted statutes authorize the making of periodical assessments upon the members of corporations organized thereunder, and it is our opinion that such assessments can be made in any way desired, that is, annually, quarterly, monthly or otherwise, so long as the required funds are secured; but we find no authority for the deduction from the face amount of the policy the unpaid part of any annual assessment. We think this latter holding is further supported by the provision in Section 11, above set out, to the effect that the corporation so organized shall "confine its operation to the issuance of certificates looking to continuous premium payments or assessments during the life time of a policyholder," and it is clear from this provision that the Legislature did not intend for any unpaid part of an annual assessment to be deducted from the face amount of the policy after the death of the insured.

Article 4875a-1--4875a-31 (Chapter 9A, Title 78) provides for the organization of local mutual aid associations paying benefits where the funds are provided by assessment of the members as needed.

Article 4875a-5 outlines what must be done in order to organize a local mutual aid association, but the latter part of Sub-division (5) thereof provides: "That the provisions of this section shall not apply to any local mutual aid association now organized and operating whose total membership shall at no time exceed One Thousand (1,000) members and which shall never charge for annual dues or assessments in excess of One ($1.00) Dollar each, and whose membership fees shall at no time exceed Two Dollars and Fifty Cents ($2.50)." We think it is clear from this provision that said excepted associations are not authorized to levy annual assessments in advance against the policies of their members.

Article 4875a-1 is as follows:

"This Act shall apply to and regulate the business of local mutual aid associations operating for the purpose of providing benefit for members and death benefit for the beneficiaries of deceased members, and shall comprehend and include all societies and associations of any sort operating an insurance business and paying such benefits where funds are provided by assessments upon the members as needed, except those hereinafter exempted."

Article 4875a-2 is as follows:

"Any person or persons desiring to organize a local mutual aid association to be operated upon the assessment as needed or similar plan shall be permitted to do so upon the terms and conditions hereinafter set forth. No person, firm or corporation shall hereafter operate in this State any sort of a local mutual aid society or association paying a death benefit or other benefits and providing its funds by assessments as needed, except under the provisions hereof, or under other specific provisions of the laws of this State."

Article 4875a-13 is as follows:

"The benefits to be paid by such association shall be dependent upon the amount realized from assessments upon the membership, and the certificates issued shall so provide; and the certificates shall also state the maximum to be paid."

Article 4875a-14 is as follows:

"An association shall not issue certificates providing for a level premium or guaranteed benefits, nor for surrender of loan values."

Article 4875a-17 is, in part, as follows:

"The funds of the association shall be derived from membership fees and assessments. Assessments shall be made upon the membership to meet benefit claims and for surplus funds and for expenses. Calls for assessments must specify the purpose for which made. . ."

While there may be some conflict between the provisions hereinabove quoted to the effect that associations organized under Chapter 9A shall secure their funds by assessments upon the members as needed and the provisions that assessments shall also be made upon the membership for surplus funds, it is our opinion that the Legislature intended to provide that all of such funds should be provided by assessments as needed, which, in our opinion, means by post-mortem assessments. Therefore, it is our opinion that any companies or associations operating under said Chapter 9A and which were so operating at the time

Honorable O. P. Lockhart, page 11

Article 5068-1 became effective are not authorized to levy annual assessments in advance, with provision that the amount of such assessments may be paid in periodical assessments.

These qualifications of our negative answer to your inquiry are based upon the conclusion that no assessment can be made upon the policy of an insured after his death, and that he would be required to pay such assessments only until the time of his death. Of course, if an annual assessment has been made and there is some part of it unpaid which was due prior to the death of the insured, then that particular part might be deducted from the face amount of the policy, but our holding is that such policyholder cannot be required to pay any assessment except that which covers claims and losses up until the time of his death, and that none of said laws authorize the deduction of unpaid installments of an annual assessment from the face amount of the policy after the death of the insured.

Trusting that this satisfactorily answers your inquiry, we are,

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By Jas. W. Bassett
    Jas. W. Bassett
    Assistant

JWB/JCP

APPROVED SEP 25 1944

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY